May it please the Court. My name is Mitchell Zeff from the law firm of Paul Weiss, Rifkin, Wharton & Garrison, and I have been appointed counsel pursuant to this Court's order of September 23, 2008, for the appellant in this case, Mr. Robert Rose. The central issue on appeal is whether genuine issues of material fact exist, suggesting that defendants acted with deliberate indifference towards Mr. Rose's due process rights. I would like to focus today on four of the arguments raised in our replacement briefs and rely on our briefs for the remaining arguments. Mr. Rose, please. Can I just ask a question? Why isn't Jo Beth Vines identified as a defendant in this case? That is an excellent question, Your Honor. That's why I asked it. I can't tell you why Ms. Vines is not a defendant. I can surmise that my client neglected to name her. However, what I can say But it's too late now. I apologize, Your Honor. It's too late now, is it not? It is too late to name her as a defendant, yes. Okay. What actually goes to one of the arguments that I hope to address a little bit later, however, is the lack of discovery that Mr. Rose has received in this case that relates to his Rule 56F argument. And though Ms. Vines can't be named as a defendant, there could be an opportunity to get her side of the story. All right. Well, with respect to the other defendants, what is the genuine issue of material fact with respect to deliberate indifference? Your Honor, in answering that question, I think it's important to keep in mind there are two aspects of Mr. Rose's due process claim that the district court found he had alleged the substantive elements of. The first aspect is with respect to the fact that the defendant supervised them pursuant to improper probation conditions, that is, probation conditions that were not imposed by the sentencing court. The second aspect of the due process claim is the lack of a preliminary hearing following Mr. Rose's arrest upon suspected violation of those conditions. So with respect to the improper probation conditions, there are two genuine issues of material fact. The first is whether Defendant Hodge was aware that he was supervising Mr. Rose pursuant to improper probation conditions. The second genuine issue of material fact is whether Defendant Strubeck was aware that probation officers under his supervision routinely supervised probationers in accordance with their own determination of sentencing conditions. Is there any evidence that Strubeck had reason to know that Vines illegally added this probation condition? The evidence for that, Your Honor, is, first of all, Defendant Strubeck's own affidavit, in which he states that he typically relies on the institutional probation officer's determination of probation conditions. And the second piece of evidence ---- There's no issue of fact there, is there? Well, the issue, Your Honor, and this relates to the second piece of evidence, namely the administrative rule that Defendant Strubeck relied on in the district court for the proposition that institutional probation officers had the right to impose their own probation conditions, creates a genuine issue of fact as to whether he knew that Ms. Vines was imposing her own probation conditions. Is there evidence that Hodge knew that probation officers relied on institutional determinations of probation conditions? There is, Your Honor. Similarly, his own affidavit, in which he states that he typically relies on the institutional probation officer's determination of probation conditions. And there is further evidence that Defendant Hodge was aware that he was supervising Mr. Rose pursuant to unlawful conditions. And what's that evidence? There are several pieces of evidence, Your Honors. One is that Defendant Hodge likely had a copy of the court's sentencing order in his file. There's nothing in the record to suggest that, is there? Other than the district court's finding, no. Well, the district court didn't say it was in the record. The district court said, in fact, based on the evidence, it wasn't in that record, but he thought in general they are in the probation officer's files. Yes, Your Honor. My understanding was that the district court said that it was likely in his file. So you want to rely on the district court on that particular matter? No, Your Honor. I would also like to bring the court's attention to a couple other reasons, pieces of evidence for Defendant Hodge's awareness. One is the fact that he's the one that arrested Mr. Rose pursuant to a violation of his probation conditions. That's after the May 19, 2001 arrest. And he filled out the probation violation reports after both the May 19, 2001 arrest and the July 14, 2001 arrest. And so he knew he had a copy of the court's sentencing order when he filled out those violation reports. Well, he at least had a copy of the probation conditions that everybody had signed, the piece of paper that everybody supposedly initialed. We know that because that was there. Correct. But we don't know that the sentencing order was there at all. Your Honor, that is 100 percent right. And that actually goes to one other point I wanted to make that I touched on earlier. I mean, my biggest problem with your argument on Hodge is that Hodge gives a, in the district court's opinion, sham affidavit to make this a genuine issue of fact. Is that Mr. Rose, Your Honor? Yes. Okay. That gave the sham affidavit. That's what the district court says. And based on our own law, this sham affidavit, the party can't create a genuine issue of fact by an affidavit contradicting his prior testimony. That's Kennedy. So what is our standard of review for this sham affidavit determination? Well, the sham affidavit is we would pose that it's part of this. Well, just ask my question. We believe it's de novo, Your Honor. Why is it de novo? Because it's part and parcel of the. What case do you cite for de novo? Taylor v. List. Well, as I look through Taylor v. List, it doesn't seem to me that it is de novo on a sham affidavit. Well, we believe that it's part and parcel of the summary judgment order, that that's a basis. That's a finding of fact, essentially. That's the district court. Let me say it this way, Your Honor. The district court basically said we're at summary judgment, right? So there's a certain threshold that Mr. Rose has to meet. And if he raises genuine issues of material fact, then the final determination of deliberate indifference is a question for the jury. So what the district court basically said was that there's. Well, we're not talking about deliberate indifference here. We're talking about whether to admit an affidavit that was submitted on summary judgment that is contrary to prior testimony. And the district court said, I'm striking that affidavit. I'm striking that testimony under common discretionary strike, which we review on a motion to strike as a discretionary decision. And he said this is a sham affidavit. And frankly, I don't know how I can say he abused his discretion in that. In 2001, your client never complained to Hodge. He said he never complained to Hodge that he had any problem with his probation conditions. And then in 2005, which is where we come, then he says he complained several times and that he ignored them. So if I can't see that to be a sham, I don't know what. I mean, that's totally contradictory. So the district court, based on a motion to strike, standard review, said I'm not going to believe that testimony in 2005. And, Your Honor, may I have a moment to address that last point? Sure. First of all, we respectfully believe that the district court got that wrong. And you only have to look to the language of Kennedy to see that. In order to find testimony to be a sham, it has to flatly contradict prior testimony. Mr. Rose's testimony from his revocation hearing in 2001 and his deposition in 2005 is perfectly consistent. In both situations, he made the following two points. He said he informed Defendant Hodge, Mr. Hodge, that he had hired an attorney to dispute his probation conditions and that Mr. Hodge didn't want to hear about it, didn't want to go over them with him. And that's why he essentially he attempted to make Mr. Hodge aware that he was being subject to improper probation conditions. Thank you very much, counsel. Your time has expired. And thank you, Your Honor. May I just have two minutes for rebuttal? Is that possible? The rules of the court are that you reserve the time in advance, counsel, and you've gone over time. And I sincerely apologize. This is ‑‑ I would just ask for fairness from the court. This is ‑‑ that is my error for doing that. This is my first shot at this. It is fairness to deny your request. It is mercy to grant it. You will have a minute afterward. Counsel, we'll have you on the other side. Thank you, Your Honor. Thank you, Your Honor. May it please the Court. Counsel, my name is Michael King. I represent Earl Strubeck, who is the supervisor of another defendant. I represent John Hodge. Both Mr. Hodge and Mr. Strubeck were field probation officers in 2001, working for the Montana Department of Corrections. They, during the pendency of this litigation, after many years of service, they have retired, and they no longer work for the department. This Court should affirm Judge Malloy's decision in this case, granting summary judgment to Mr. Hodge and Mr. Strubeck for four reasons. First of all, Mr. Hodge and Mr. Strubeck simply didn't impose the probation conditions on Mr. Rose, that Mr. Rose complains about. Secondly, as concerns Mr. Strubeck, Mr. Rose simply didn't satisfy his summary judgment duty of producing specific facts showing what he did wrong in this case in connection with either the imposition or the enforcement of his probation conditions. Thirdly, as concerns Mr. Hodge, Mr. Rose did not, again, satisfy his summary judgment duty of producing specific facts, showing that Mr. Hodge violated his constitutional rights while enforcing his probation conditions. And fourthly, as concerns the issue of whether there was an appropriately or reasonably conducted preliminary hearing at a reasonable time, again, Mr. Rose did not produce any facts in that district court showing that the 42-day delay between his arrests and his final revocation hearing was both unreasonable or prejudicial. And in addition, he didn't show that he, but more importantly his attorney, because we know he had an attorney at the time, ever demanded any quicker process. Let me ask you a question that worries me. I mean, the situation may be as you suggest, but there comes a time in this process before the district court and before the magistrate court when the defendant or the plaintiff in this particular case wants to have some more time just to get some discovery, just to go out and see if he can't find some affidavits or something that will help him. All of that evidence is in the hands of the government. None of it is in his hands. And if I review the standard of the law at this point, what is there that would say to me that when all of the evidence, and we really have a pro se man here, all of the evidence is in the hands of the government, that he ought not have the chance to do some discovery to make sure the facts as you presented them are correct? Well, I think I have two responses to that. One, Mr. Rose, from the date of the events that occurred in this case, Mr. Rose, and I understand he's in prison and incarcerated, had 55 months to investigate the case, including, I think, 20 plus months of formal discovery. During that period of time, he sent out written interrogatories, requests for production and requests for admission to Mr. Hodge and Mr. Strubeck, and those were answered in the due course of my representation of those folks. So he's had ample time. This isn't a case that, and I'm going to refer to Sellotex, where the Supreme Court indicated that Mr. Strubeck or Mr. Hodge filed a premature motion for summary judgment. They, in fact, waited until discovery was over with to give Mr. Rose the opportunity to pursue discovery and then filed their motion for summary judgment. So if, in fact, you're saying that they waited for the whole time period to go and then filed a motion, you're suggesting that that's enough to offset this pro se person's opportunity to discover the facts in this particular situation? Again, I think Mr. Rose had ample opportunity to discover the facts in this case. And Judge Malloy, I think, who reviewed Mr. Rose's request for more time, concluded in response to his Rule 56 affidavit that Mr. Rose did not take advantage of the opportunities that he had. Let me ask you, since you moved to Judge Malloy, it's of some worry to me that we have a standard of culpability. Or, in other words, this summary judgment motion is pretty significant. This plaintiff had not been in civil proceedings, probably didn't know what summary judgments were. And if I read the court record, it doesn't seem to me that anybody ever told him how significant this summary judgment was. And there's an answer to that. I know. I want your answer because, I mean, these are procedural things that, you know, I got all your facts down and I can pretty well lay out your facts. But if he'd have had a lawyer there, there might have been more discovery, which would have maybe provided the answer to Judge O'Scanlan's question that started this off. Or maybe provided the answer as to who really put these conditions together. Or maybe a lot of things, which your client said he put them together once. And then Judge Malloy had to say that wasn't a sham affidavit, but the other one was. And so, I mean, I guess at this point I'm having trouble with the procedure, even if we get to your points. And I think that your question and concern is answered if we take a look at how this case developed in the district court. When I filed Mr. Strubeck's and Mr. Hodge's summary judgment motion, and if you review my motion, I do not allege any sort of Alexander v. Peril. I don't make any sort of Alexander v. Peril argument. And the reason I didn't was because Mr. Rose did not allege in his complaint that John Hodge or Earl Strubeck, that he complained to John Hodge or Earl Strubeck, and that they ignored his concerns. That wasn't part of the allegations of his complaint. And consequently, I didn't include the Alexander Peril argument in my motion for summary judgment. It just – it appeared for the first time. Let me back up. There's another reason I didn't include it in my summary judgment motion, and it's because I knew that Mr. Rose had testified in 2001 at his revocation hearing that he, upon advice of counsel, did not complain to Mr. Hodge about his probation conditions. So I did not see any need to address that as an issue at summary judgment. Instead, Judge Malloy and Magistrate Lynch, to their credit, in order to give Mr. Rose, I think, every benefit of the doubt and try to salvage his complaint, if at all possible, took it upon themselves to pursue the Alexander v. Peril line of reasoning and concluded – I didn't tell Judge Malloy or Magistrate Lynch that Mr. Rose had given sham testimony. That was something Magistrate Lynch and Judge Malloy discovered on their own in trying to figure out whether he could proceed under an Alexander v. Peril theory. Consequently, because I never raised the deliberate indifference issue in my summary judgment briefs, I personally could not give Mr. Rose notice of that issue. It just wasn't on my radar screen at that time. It only got onto the radar screen when the magistrate judge and the district court judge determined to address that issue sui sponte. Which leads us, really, to the situation where we are, which is the magistrate judge nor the district judge really ever prepared this particular plaintiff for what a summary judgment was really about on issues that were pretty important. And that's his allegation here. That's his complaint. Right. I think that's kind of a red herring because I think the district court could very easily have just avoided the Alexander v. Peril line of reasoning. They didn't have to get into that because it wasn't part of Mr. Rose's allegations. It wasn't part of the summary judgment brief I filed on behalf of Hodge and Strubeck. Had the district court confined itself to the arguments raised in the summary judgment motion and decided those without engaging in additional discussion of Alexander Peril, we may not be here today on that very issue because it just may never have come up. In other words, I believe that the district court was capable of granting summary judgment to Strubeck and Hodge without even addressing the deliberate indifference issue. Again, Mr. Rose never even raised that issue in his complaint. So I'm not sure why the district court, other than trying to give Mr. Rose every benefit of the doubt, indulged itself in that inquiry. Those are my questions, Counsel. All right. Thank you, Counsel. Your time has expired. Thank you, Your Honor. Mr. Zeff, you have one minute. All right. Twenty seconds each on three points, Your Honor. With respect to the discovery and the lack of discovery, the pro se plaintiff received seven pages of discovery on the close of discovery, affidavits from the two defendants and the declaration of misbinds, and the only response in ER 395 and defendant's document responses were that misbinds had helpful information, never got to depose her or the defendants, tried very hard, got no discovery. On the preliminary hearing, the cases the State relies on, Pierre and State v. Johnson, at best stand for the proposition that a preliminary final revocation hearing within 21 days is prompt enough to avoid the two-step requirement of Morrissey and Gagnon. Even under that reading, that didn't happen in this case, 42 days to preliminary hearing, 50 days to leave post bond and get out of jail. Last comment, the standard of culpability, here is our argument. Federal Rule of Civil Procedure 56C has a materiality requirement, a notice, and the Ninth Circuit and Supreme Court require district courts in the absence of notice from defense counsel to inform pro se prisoner litigants of the meaning and consequences of summary judgment. We're familiar with that argument. Thank you, counsel. Your time has expired. Counsel, your time has expired. Fair enough. Last thing I'll say. Counsel, your time has expired. I just wanted to thank the Court for the honor and privilege of appearing before you here today. Thank you for your time. Very well. The case just argued will be submitted for decision, and the Court will hear argument next in United States v. Mayhem. Thank you. Thank you.
judges: Wolle, O'scannlain, Smith M., Goodwin, Fisher